UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONEYFORLAWSUITS V LP
d/b/a MFL CASEFUNDING, a Delaware
limited partnership, and
GUARDIAN ADVISORS LP II
d/b/a MFL CASEFUNDING, a Delaware
limited partnership,

              Plaintiffs,                      Case No. _____

v.

TAMMY ROWE a/k/a TAMMY LACROSS,
CARRIE FLEMION, LURA L. GIPSON,
ROXANNE LOFTON, DELORES MADISON,
WENDY GARAGIOLA, PAMELA MOFFIT,
all Michigan residents, and VIVIAN
AROUSELL, an Indiana resident,

              Defendants.

_____/

## COMPLAINT

Plaintiffs MoneyForLawsuits V LP d/b/a MFL CaseFunding and Guardian Advisors LP II d/b/a MFL CaseFunding (collectively, "CaseFunding"), by their attorneys, state as follows for their Complaint against Defendants Tammy Rowe a/k/a Tammy LaCross, Carrie Flemion, Lura L. Gipson, Roxanne Lofton, Delores Madison, Wendy Garagiola, Pamela Moffit and Vivian Arousell.

### Nature of Action

1.      This is an action for money damages to recover funds owed by Defendants to CaseFunding under Contingent Purchase Agreements pursuant to which CaseFunding purchased from Defendants a portion of potential proceeds from a civil rights class action against the Michigan Department of Corrections and others.  The parties settled the class action for $100 million, of which Defendants are entitled to a portion.  Defendants received their first payments

under the settlement agreement in late 2009 and will receive additional annual payments through October 2014.

## Parties

2.      Plaintiffs are Delaware limited partnerships with principal places of business located at 32 West 39th Street, 12th Floor, New York, New York 10018.

3.      On information and belief, Defendant Tammy Rowe a/k/a Tammy LaCross ("Rowe") is a Michigan resident who resides at 1906 Vermont Street, Saginaw, Michigan 48602.

4.      On information and belief, Defendant Carrie Flemion ("Flemion") is a Michigan resident who resides at 50940 Altman, Apt. 101, New Baltimore, Michigan 48047.

5.      On information and belief, Defendant Lura L. Gipson ("Gipson") is a Michigan resident who resides at 2535 South Grove Street, Ypsilanti, Michigan 48198.

6.      On information and belief, Defendant Roxanne Lofton ("Lofton") is a Michigan resident who resides at 208 Seeley Street, Adrian, Michigan 49221.

7.      On information and belief, Defendant Delores Madison ("Madison") is a Michigan resident who resides at 9605 Evergreen Road, Detroit, Michigan 48228.

8.      On information and belief, Defendant Wendy Garagiola ("Garagiola") is a Michigan resident who resides at 527 Clinton St., Howell, Michigan.

9.      On information and belief, Defendant Pamela Moffit ("Moffit") is a Michigan resident who resides at 6940 Grand River Rd., Laingsburg, Michigan 48848.

10.      On information and belief, Defendant Vivian Arousell ("Arousell") is an Indiana resident who resides at 405 James Street, Elkhart, Indiana 46516.

2

00506178.DOC

**Jurisdiction and Venue**

11.     This Court has jurisdiction under 28 U.S.C. §1332 in that the matter in controversy is between citizens of different states and exceeds the sum or value of $75,000 exclusive of interest and costs.

12.     This Court has personal jurisdiction over Defendants because (a) they are Michigan residents and (b) the property at issue (settlement funds) is situated in and is being distributed from the State of Michigan.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

**Facts**

14.     CaseFunding is in the business of investing in claims and lawsuits by purchasing the right to receive a portion of settlement or judgment proceeds from parties engaged in litigation.   In exchange for CaseFunding providing funding to plaintiffs in pending lawsuits, plaintiffs assign the right to potential future proceeds, contingent on there being any such proceeds.

15.     CaseFunding entered into Contingent Proceeds Purchase Agreements ("Contingent Purchase Agreements") with Defendants as members of the Plaintiff Class in a recently settled class action captioned *Neal, et al. v. Michigan Department of Corrections* (Washtenaw Circuit Court, Case No. 96-6986-CZ) in joinder with *Anderson, et al. v. Michigan Department of Corrections* (Washtenaw Circuit Court, Case No. 03-162-CZ); *LaCross, et al. v. Zang, et al.* (Washtenaw Circuit Court, Case No. 05-944-CZ); and *Mason, et al. Granholm, et al.* (E.D. Mich., Case No. 05-cv-73943) (collectively, the "Litigation").

16.     On August 21, 2009, the Washtenaw County Circuit Court entered an Order Granting Final Approval of Settlement, Plan of Allocation and Order of Distribution in the Litigation (the "Final Settlement Order"). (Ex. I.)

17.     The Final Settlement Order approved a settlement of the Litigation in the total amount of One Hundred Million Dollars ($100,000,000.00) and a Plan of Allocation for allocating and distributing the settlement proceeds. (*Id.*; Ex. J, Plan of Allocation.)

18.     The Plan of Allocation provides for the distribution of Seventy-One Million Two Hundred Eighty Thousand Dollars ($71,280,000.00) to members of the Plaintiff Class in the Litigation over a period of six (6) years, through October 2014. (Ex. J, p. 4.)

19.     The Plan of Allocation provides that Defendants will each receive ten percent (10%) of their settlement proceeds in 2009, ten percent (10%) in October 2010, fifteen percent (15%) in October 2011, twenty percent (20%) in October 2012, twenty percent (20%) in October 2013 and twenty-five (25%) in October 2014. (*Id.*)

20.     The Final Settlement Order and the Plan of Allocation call for an escrow agent to receive and distribute the settlement proceeds to Defendants and other members of the Plaintiff Class.

21.     On information and belief, Defendants all received the first installment of their portion of the settlement proceeds in late 2009.

22.     CaseFunding entered into Contingent Purchase Agreements with the eight Defendants in this case as members of the Plaintiff Class in the Litigation between March 2008 and June 2009. (Ex. A-H.)

4

00506178.DOC

23. The Contingent Purchase Agreements state that each Defendant "<u>unconditionally and irrevocably grants, assigns, transfers and conveys</u>" a portion of any potential proceeds from a settlement or judgment to CaseFunding. (*Id.*, p. 2 ¶ 3, emphasis added.)

24. The Contingent Purchase Agreements state:

> Purchaser's [CaseFunding's] share shall be paid to Purchaser in full on the date the Proceeds are received. <u>Purchaser's share shall be withheld from any money collected as a result of the Claim and paid to Purchaser immediately upon collection</u> without set-off or reduction of any kind. The amount due shall be paid immediately after attorney fees (including expenses charged by the Seller's attorney for costs) and after payment to any recorded lien holders that might exist prior to the date hereof, or which may have priority by law. <u>Seller will not receive any money from the Proceeds of the Claim until Purchaser has been paid in full</u>.
>
> <u>In the event the proceeds are received in multiple payments</u>, whether pursuant to a structured settlement, annuity, or other form of installment payment or incremental recovery, <u>Purchaser's right to receive full payment of its Share from such Proceeds shall be prior and senior to the Seller's rights to receive any portion of the Proceeds</u>.

(*Id.*, emphasis added.)

25. The Contingent Purchase Agreements state:

> If the Proceeds are insufficient to pay Purchaser's Share, then Purchaser's Share will be limited to the Proceeds from the Claim.
>
> If the Seller does not recover any money from the Claim, then the Seller shall owe nothing to Purchaser.

(*Id.*)

26. Defendants agreed under the Contingent Purchase Agreements, among other things, to "(ii) cooperate with Purchaser regarding matters described in this Agreement; and (iii) notify Purchaser of any verdict, award, settlement, discontinuance or ending with respect to the Claim . . . ." (Exs A-H, p. 4, ¶ 11.)

27. Defendants agreed under the Contingent Purchase Agreements "to execute and deliver to Purchaser any and all documentation requested by Purchaser that could assist Purchaser in enforcing its rights as described in this Agreement." (*Id.*)

28. The Contingent Purchase Agreements state:

Seller hereby waives any defense to payment of the sums due and promises not to seek to avoid payment of any money due to Purchaser under this Agreement. . . . In the event of a violation or threatened violation by Seller of the covenants and agreements contained in this Agreement, Purchaser, in addition to and not in limitation of, any other right, remedies or damages available to Purchaser at law or in equity, shall be entitled to equitable relief as may be appropriate, including an order for specific performance.

(*Id.*, p. 5, ¶ 14.)

29. Pursuant to its Contingent Purchaser Agreements with Defendants, CaseFunding provided approximately $865,000 in funding to or on behalf of Defendants.

30. Defendants failed to notify CaseFunding of the settlement in the Litigation.

31. Defendants failed to notify CaseFunding of their receipt of settlement proceeds from the Litigation.

32. Defendants failed to pay to CaseFunding amounts received from the first installment of Defendants' portions of the settlement proceeds from the Litigation in late 2009.

33. On information and belief, certain Defendants have stated that they do not intend to honor their obligations under the Contingent Purchase Agreements.

34. CaseFunding's knowledge that certain Defendants intend to continue breaching the Contingent Purchase Agreements is based on the following statement from one of the Defendants, Carrie Flemion, in a September 26, 2009 letter to CaseFunding: "After my conversation with [Class Counsel] it came to my attention that one or two of the other plaintiffs

6

who received money from [CaseFunding] did not intend to pay you since they would be receiving the settlement directly from defendants." (Ex. K.)

## Count I -- Breach of Contract (Rowe)

35.     CaseFunding incorporates the allegations in Paragraphs 1 through 34 as if set forth in full here.

36.     CaseFunding entered into a Contingent Purchase Agreement with Defendant Rowe on or about March 13, 2008.  (Ex. A.)

37.     Defendant Rowe agreed under the Contingent Purchase Agreements, among other things, to "(ii) cooperate with Purchaser regarding matters described in this Agreement; and (iii) notify Purchaser of any verdict, award, settlement, discontinuance or ending with respect to the Claim . . . ." (*Id.*, p. 4, ¶ 11.)

38.     Defendant Rowe agreed under the Contingent Purchase Agreements "to execute and deliver to Purchaser any and all documentation requested by Purchaser that could assist Purchaser in enforcing its rights as described in this Agreement." (*Id.*)

39.     Defendant Rowe has breached the Contingent Purchase Agreement by failing to notify CaseFunding of the settlement in this case.

40.     Defendant Rowe has breached the Contingent Purchase Agreement by failing to pay to CaseFunding amounts received from the first installment of her portion of the settlement proceeds from the Litigation.

41.     CaseFunding has suffered and continues to suffer damages as a result of Rowe's breaches of the Contingent Purchase Agreement.

42.     CaseFunding has performed all of its obligations under the Contingent Purchase Agreement with Rowe.

7

43.     As of the date of the Complaint, CaseFunding has suffered damages totaling $284,145.31 caused by Rowe's breaches of the Contingent Purchase Agreement.

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Rowe (i) awarding damages to CaseFunding in the amount of at least $284,145.31, plus interest, attorney fees and costs; and (ii) directing Defendant Rowe to execute and deliver instruction to the escrow agent responsible for distributing settlement proceeds to members of the Plaintiff Class in the Litigation to pay all of Rowe's portion of the settlement proceeds to CaseFunding until such time as all amounts due under the Contingent Purchase Agreement have been paid to CaseFunding.

### Count II -- Breach of Contract (Flemion)

44.     CaseFunding incorporates the allegations in Paragraphs 1 through 43 as if set forth in full here.

45.     CaseFunding entered into a Contingent Purchase Agreement with Defendant Flemion on or about June 26, 2009.  (Ex. B.)

46.     Defendant Flemion agreed under the Contingent Purchase Agreement, among other things, to "(ii) cooperate with Purchaser regarding matters described in this Agreement; and (iii) notify Purchaser of any verdict, award, settlement, discontinuance or ending with respect to the Claim . . . ." (*Id.*, p. 4, ¶ 11.)

47.     Defendant Flemion agreed under the Contingent Purchase Agreements "to execute and deliver to Purchaser any and all documentation requested by Purchaser that could assist Purchaser in enforcing its rights as described in this Agreement." (*Id.*)

48.     Defendant Flemion has breached the Contingent Purchase Agreement by failing to notify CaseFunding of the settlement in this case.

00506178.DOC

49. Defendant Flemion has breached the Contingent Purchase Agreement by failing to pay to CaseFunding amounts received from the first installment of her portion of the settlement proceeds from the Litigation.

50. CaseFunding has suffered and continues to suffer damages as a result of Flemion's breaches of the Contingent Purchase Agreement.

51. CaseFunding has performed all of its obligations under the Contingent Purchase Agreement with Flemion.

52. As of the date of the Complaint, CaseFunding has suffered damages totaling $278,591.87 caused by Flemion's breaches of the Contingent Purchase Agreement.

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Flemion (i) awarding damages to CaseFunding in the amount of at least $278,591.87, plus interest, attorney fees and costs; and (ii) directing Defendant Flemion to execute and deliver instruction to the escrow agent responsible for distributing settlement proceeds to members of the Plaintiff Class in the Litigation to pay all of Flemion's portion of the settlement proceeds to CaseFunding until such time as all amounts due under the Contingent Purchase Agreement have been paid to CaseFunding.

### Count III -- Breach of Contract (Gipson)

53. CaseFunding incorporates the allegations in Paragraphs 1 through 52 as if set forth in full here.

54. CaseFunding entered into a Contingent Purchase Agreement with Defendant Gipson on or about June 26, 2009. (Ex. C.)

55. Defendant Gipson agreed under the Contingent Purchase Agreements, among other things, to "(ii) cooperate with Purchaser regarding matters described in this Agreement;

9

and (iii) notify Purchaser of any verdict, award, settlement, discontinuance or ending with respect to the Claim . . . ." (*Id.*, p. 4, ¶ 11.)

56.     Defendant Gipson agreed under the Contingent Purchase Agreements "to execute and deliver to Purchaser any and all documentation requested by Purchaser that could assist Purchaser in enforcing its rights as described in this Agreement." (*Id.*)

57.     Defendant Gipson has breached the Contingent Purchase Agreement by failing to notify CaseFunding of the settlement in this case.

58.     Defendant Gipson has breached the Contingent Purchase Agreement by failing to pay to CaseFunding amounts received from the first installment of her portion of the settlement proceeds from the Litigation.

59.     CaseFunding has suffered and continues to suffer damages as a result of Gipson's breaches of the Contingent Purchase Agreement.

60.     CaseFunding has performed all of its obligations under the Contingent Purchase Agreement with Gipson.

61.     As of the date of the Complaint, CaseFunding has suffered damages totaling $231,165.46 caused by Gipson's breaches of the Contingent Purchase Agreement.

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Gipson (i) awarding damages to CaseFunding in the amount of at least $231,165.46, plus interest, attorney fees and costs; and (ii) directing Defendant Gipson to execute and deliver instruction to the escrow agent responsible for distributing settlement proceeds to members of the Plaintiff Class in the Litigation to pay all of Gipson's portion of the settlement proceeds to CaseFunding until such time as all amounts due under the Contingent Purchase Agreement have been paid to CaseFunding.

00506178.DOC

## Count IV -- Breach of Contract (Lofton)

62. CaseFunding incorporates the allegations in Paragraphs 1 through 61 as if set forth in full here.

63. CaseFunding entered into a Contingent Purchase Agreement with Defendant Lofton on or about June 16, 2009. (Ex. D.)

64. Defendant Lofton agreed under the Contingent Purchase Agreements, among other things, to "(ii) cooperate with Purchaser regarding matters described in this Agreement; and (iii) notify Purchaser of any verdict, award, settlement, discontinuance or ending with respect to the Claim . . . ." (*Id.*, p. 4, ¶ 11.)

65. Defendant Lofton agreed under the Contingent Purchase Agreements "to execute and deliver to Purchaser any and all documentation requested by Purchaser that could assist Purchaser in enforcing its rights as described in this Agreement." (*Id.*)

66. Defendant Lofton has breached the Contingent Purchase Agreement by failing to notify CaseFunding of the settlement in this case.

67. Defendant Lofton has breached the Contingent Purchase Agreement by failing to pay to CaseFunding amounts received from the first installment of her portion of the settlement proceeds from the Litigation.

68. CaseFunding has suffered and continues to suffer damages as a result of Lofton's breaches of the Contingent Purchase Agreement.

69. CaseFunding has performed all of its obligations under the Contingent Purchase Agreement with Lofton.

70. As of the date of the Complaint, CaseFunding has suffered damages totaling $123,232.62 caused by Lofton's breaches of the Contingent Purchase Agreement.

11

00506178.DOC

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Lofton (i) awarding damages to CaseFunding in the amount of at least $123,232.62, plus interest, attorney fees and costs; and (ii) directing Defendant Lofton to execute and deliver instruction to the escrow agent responsible for distributing settlement proceeds to members of the Plaintiff Class in the Litigation to pay all of Lofton's portion of the settlement proceeds to CaseFunding until such time as all amounts due under the Contingent Purchase Agreement have been paid to CaseFunding.

### Count V -- Breach of Contract (Madison)

71.    CaseFunding incorporates the allegations in Paragraphs 1 through 70 as if set forth in full here.

72.    CaseFunding entered into a Contingent Purchase Agreement with Defendant Madison on or about June 16, 2009.  (Ex. E.)

73.    Defendant Madison agreed under the Contingent Purchase Agreements, among other things, to "(ii) cooperate with Purchaser regarding matters described in this Agreement; and (iii) notify Purchaser of any verdict, award, settlement, discontinuance or ending with respect to the Claim . . . ." (*Id.*, p. 4, ¶ 11.)

74.    Defendant Madison agreed under the Contingent Purchase Agreements "to execute and deliver to Purchaser any and all documentation requested by Purchaser that could assist Purchaser in enforcing its rights as described in this Agreement." (*Id.*)

75.    Defendant Madison has breached the Contingent Purchase Agreement by failing to notify CaseFunding of the settlement in this case.

00506178.DOC

76.    Defendant Madison has breached the Contingent Purchase Agreement by failing to pay to CaseFunding amounts received from the first installment of her portion of the settlement proceeds from the Litigation.

77.    CaseFunding has suffered and continues to suffer damages as a result of Madison's breaches of the Contingent Purchase Agreement.

78.    CaseFunding has performed all of its obligations under the Contingent Purchase Agreement with Madison.

79.    As of the date of the Complaint, CaseFunding has suffered damages totaling $248,035.65 caused by Madison's breaches of the Contingent Purchase Agreement.

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Madison (i) awarding damages to CaseFunding in the amount of at least $248,035.65, plus interest, attorney fees and costs; and (ii) directing Defendant Madison to execute and deliver instruction to the escrow agent responsible for distributing settlement proceeds to members of the Plaintiff Class in the Litigation to pay all of Madison's portion of the settlement proceeds to CaseFunding until such time as all amounts due under the Contingent Purchase Agreement have been paid to CaseFunding.

### Count VI -- Breach of Contract (Garagiola)

80.    CaseFunding incorporates the allegations in Paragraphs 1 through 79 as if set forth in full here.

81.    CaseFunding entered into a Contingent Purchase Agreement with Defendant Garagiola on or about February 10, 2009.  (Ex. F.)

82.    Defendant Garagiola agreed under the Contingent Purchase Agreements, among other things, to "(ii) cooperate with Purchaser regarding matters described in this Agreement;

13

and (iii) notify Purchaser of any verdict, award, settlement, discontinuance or ending with respect to the Claim . . . ." (*Id.*, p. 4, ¶ 11.)

83.     Defendant Garagiola agreed under the Contingent Purchase Agreements "to execute and deliver to Purchaser any and all documentation requested by Purchaser that could assist Purchaser in enforcing its rights as described in this Agreement." (*Id.*)

84.     Defendant Garagiola has breached the Contingent Purchase Agreement by failing to notify CaseFunding of the settlement in this case.

85.     Defendant Garagiola has breached the Contingent Purchase Agreement by failing to pay to CaseFunding amounts received from the first installment of her portion of the settlement proceeds from the Litigation.

86.     CaseFunding has suffered and continues to suffer damages as a result of Garagiola's breaches of the Contingent Purchase Agreement.

87.     CaseFunding has performed all of its obligations under the Contingent Purchase Agreement with Madison.

88.     As of the date of the Complaint, CaseFunding has suffered damages totaling $210,771.35 caused by Garagiola's breaches of the Contingent Purchase Agreement.

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Garagiola (i) awarding damages to CaseFunding in the amount of at least $210,771.35, plus interest, attorney fees and costs; and (ii) directing Defendant Garagiola to execute and deliver instruction to the escrow agent responsible for distributing settlement proceeds to members of the Plaintiff Class in the Litigation to pay all of Garagiola's portion of the settlement proceeds to CaseFunding until such time as all amounts due under the Contingent Purchase Agreement have been paid to CaseFunding.

14

00506178.DOC

## Count VII -- Breach of Contract (Moffit)

89.   CaseFunding incorporates the allegations in Paragraphs 1 through 88 as if set forth in full here.

90.   CaseFunding entered into a Contingent Purchase Agreement with Defendant Moffit on or about February 10, 2009.  (Ex. G.)

91.   Defendant Moffit agreed under the Contingent Purchase Agreements, among other things, to "(ii) cooperate with Purchaser regarding matters described in this Agreement; and (iii) notify Purchaser of any verdict, award, settlement, discontinuance or ending with respect to the Claim . . . ." (*Id.*, p. 4, ¶ 11.)

92.   Defendant Moffit agreed under the Contingent Purchase Agreements "to execute and deliver to Purchaser any and all documentation requested by Purchaser that could assist Purchaser in enforcing its rights as described in this Agreement." (*Id.*)

93.   Defendant Moffit has breached the Contingent Purchase Agreement by failing to notify CaseFunding of the settlement in this case.

94.   Defendant Moffit has breached the Contingent Purchase Agreement by failing to pay to CaseFunding amounts received from the first installment of her portion of the settlement proceeds from the Litigation.

95.   CaseFunding has suffered and continues to suffer damages as a result of Moffit's breaches of the Contingent Purchase Agreement.

96.   CaseFunding has performed all of its obligations under the Contingent Purchase Agreement with Moffit.

97.   As of the date of the Complaint, CaseFunding has suffered damages totaling $185,920.66 caused by Moffit's breaches of the Contingent Purchase Agreement.

15

00506178.DOC

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Moffit (i) awarding damages to CaseFunding in the amount of at least $185,920.66, plus interest, attorney fees and costs; and (ii) directing Defendant Moffit to execute and deliver instruction to the escrow agent responsible for distributing settlement proceeds to members of the Plaintiff Class in the Litigation to pay all of Moffit's portion of the settlement proceeds to CaseFunding until such time as all amounts due under the Contingent Purchase Agreement have been paid to CaseFunding.

### Count VIII -- Breach of Contract (Arousell)

98.     CaseFunding incorporates the allegations in Paragraphs 1 through 97 as if set forth in full here.

99.     CaseFunding entered into a Contingent Purchase Agreement with Defendant Arousell on or about May 13, 2009.  (Ex. H.)

100.     Defendant Arousell agreed under the Contingent Purchase Agreements, among other things, to "(ii) cooperate with Purchaser regarding matters described in this Agreement; and (iii) notify Purchaser of any verdict, award, settlement, discontinuance or ending with respect to the Claim . . . ."  (*Id.*, p. 4, ¶ 11.)

101.     Defendant Arousell agreed under the Contingent Purchase Agreements "to execute and deliver to Purchaser any and all documentation requested by Purchaser that could assist Purchaser in enforcing its rights as described in this Agreement."  (*Id.*)

102.     Defendant Arousell has breached the Contingent Purchase Agreement by failing to notify CaseFunding of the settlement in this case.

00506178.DOC

103.    Defendant Arousell has breached the Contingent Purchase Agreement by failing to pay to CaseFunding amounts received from the first installment of her portion of the settlement proceeds from the Litigation.

104.    CaseFunding has suffered and continues to suffer damages as a result of Arousell's breaches of the Contingent Purchase Agreement.

105.    CaseFunding has performed all of its obligations under the Contingent Purchase Agreement with Arousell.

106.    As of the date of the Complaint, CaseFunding has suffered and will suffer damages totaling at least $123,619.54 caused by Arousell's breaches of the Contingent Purchase Agreement.

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Arousell (i) awarding damages to CaseFunding in the amount of at least $123,619.54, plus interest, attorney fees and costs; and (ii) directing Defendant Arousell to execute and deliver instruction to the escrow agent responsible for distributing settlement proceeds to members of the Plaintiff Class in the Litigation to pay all of Arousell's portion of the settlement proceeds to CaseFunding until such time as all amounts due under the Contingent Purchase Agreement have been paid to CaseFunding.

### Count IX -- Anticipatory Breach of Contract (Rowe)

107.    CaseFunding incorporates the allegations in Paragraphs 1 through 106 as if set forth in full here.

108.    Defendant Rowe's breaches of her Contingent Purchase Agreement with CaseFunding manifest a clear intent not to honor the terms of the Agreement, including the intent not to make future payments owed to CaseFunding under the Agreement.

17

00506178.DOC

109. Rowe's clear indication of her intent not to honor the terms of her Contingent Purchase Agreement with CaseFunding amounts to anticipatory breach of the Agreement.

110. CaseFunding also is informed that certain Defendants have stated that they do not intend to honor their obligations under the Contingent Purchase Agreements.

111. Statements by Defendants that they intend to breach the Contingent Purchase Agreements amount to anticipatory breach of the Agreements.

112. CaseFunding will suffer damages as a result of the anticipatory breaches of the Contingent Purchase Agreement.

113. CaseFunding has performed all of its obligations under the Contingent Purchase Agreement.

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Rowe in the amount of at least $284,145.31, plus interest, attorney fees and costs.

## Count X -- Anticipatory Breach of Contract (Flemion)

114. CaseFunding incorporates the allegations in Paragraphs 1 through 113 as if set forth in full here.

115. Defendant Flemion's breaches of her Contingent Purchase Agreement with CaseFunding manifest a clear intent not to honor the terms of the Agreement, including the intent not to make future payments owed to CaseFunding under the Agreement.

116. Flemion's clear indication of her intent not to honor the terms of her Contingent Purchase Agreement with CaseFunding amounts to anticipatory breach of the Agreement.

117. CaseFunding also is informed that certain Defendants have stated that they do not intend to honor their obligations under the Contingent Purchase Agreements.

18

118.    Statements by Defendants that they intend to breach the Contingent Purchase Agreements amount to anticipatory breach of the Agreements.

119.    CaseFunding will suffer damages as a result of the anticipatory breaches of the Contingent Purchase Agreement.

120.    CaseFunding has performed all of its obligations under the Contingent Purchase Agreement.

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Flemion in the amount of at least $278,591.87, plus interest, attorney fees and costs.

### Count XI -- Anticipatory Breach of Contract (Gipson)

121.    CaseFunding incorporates the allegations in Paragraphs 1 through 120 as if set forth in full here.

122.    Defendant Gipson's breaches of her Contingent Purchase Agreement with CaseFunding manifest a clear intent not to honor the terms of the Agreement, including the intent not to make future payments owed to CaseFunding under the Agreement.

123.    Gipson's clear indication of her intent not to honor the terms of her Contingent Purchase Agreement with CaseFunding amounts to anticipatory breach of the Agreement.

124.    CaseFunding also is informed that certain Defendants have stated that they do not intend to honor their obligations under the Contingent Purchase Agreements.

125.    Statements by Defendants that they intend to breach the Contingent Purchase Agreements amount to anticipatory breach of the Agreements.

126.    CaseFunding will suffer damages as a result of the anticipatory breaches of the Contingent Purchase Agreement.

19

00506178.DOC

127. CaseFunding has performed all of its obligations under the Contingent Purchase Agreement.

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Gipson in the amount of at least $231,165.46, plus interest, attorney fees and costs.

## Count XII -- Anticipatory Breach of Contract (Lofton)

128. CaseFunding incorporates the allegations in Paragraphs 1 through 127 as if set forth in full here.

129. Defendant Lofton's breaches of her Contingent Purchase Agreement with CaseFunding manifest a clear intent not to honor the terms of the Agreement, including the intent not to make future payments owed to CaseFunding under the Agreement.

130. Lofton's clear indication of her intent not to honor the terms of her Contingent Purchase Agreement with CaseFunding amounts to anticipatory breach of the Agreement.

131. CaseFunding also is informed that certain Defendants have stated that they do not intend to honor their obligations under the Contingent Purchase Agreements.

132. Statements by Defendants that they intend to breach the Contingent Purchase Agreements amount to anticipatory breach of the Agreements.

133. CaseFunding will suffer damages as a result of the anticipatory breaches of the Contingent Purchase Agreement.

134. CaseFunding has performed all of its obligations under the Contingent Purchase Agreement.

00506178.DOC

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Lofton in the amount of at least $123,232.62, plus interest, attorney fees and costs.

### Count XIII -- Anticipatory Breach of Contract (Madison)

135.    CaseFunding incorporates the allegations in Paragraphs 1 through 134 as if set forth in full here.

136.    Defendant Madison's breaches of her Contingent Purchase Agreement with CaseFunding manifest a clear intent not to honor the terms of the Agreement, including the intent not to make future payments owed to CaseFunding under the Agreement.

137.    Madison's clear indication of her intent not to honor the terms of her Contingent Purchase Agreement with CaseFunding amounts to anticipatory breach of the Agreement.

138.    CaseFunding also is informed that certain Defendants have stated that they do not intend to honor their obligations under the Contingent Purchase Agreements.

139.    Statements by Defendants that they intend to breach the Contingent Purchase Agreements amount to anticipatory breach of the Agreements.

140.    CaseFunding will suffer damages as a result of the anticipatory breaches of the Contingent Purchase Agreement.

141.    CaseFunding has performed all of its obligations under the Contingent Purchase Agreement.

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Madison in the amount of at least $248,035.65, plus interest, attorney fees and costs.

21

### Count XIV -- Anticipatory Breach of Contract (Garagiola)

142.    CaseFunding incorporates the allegations in Paragraphs 1 through 141 as if set forth in full here.

143.    Defendant Garagiola's breaches of her Contingent Purchase Agreement with CaseFunding manifest a clear intent not to honor the terms of the Agreement, including the intent not to make future payments owed to CaseFunding under the Agreement.

144.    Garagiola's clear indication of her intent not to honor the terms of her Contingent Purchase Agreement with CaseFunding amounts to anticipatory breach of the Agreement.

145.    CaseFunding also is informed that certain Defendants have stated that they do not intend to honor their obligations under the Contingent Purchase Agreements.

146.    Statements by Defendants that they intend to breach the Contingent Purchase Agreements amount to anticipatory breach of the Agreements.

147.    CaseFunding will suffer damages as a result of the anticipatory breaches of the Contingent Purchase Agreement.

148.    CaseFunding has performed all of its obligations under the Contingent Purchase Agreement.

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Garagiola in the amount of at least $210,771.35, plus interest, attorney fees and costs.

### Count XV -- Anticipatory Breach of Contract (Moffit)

149.    CaseFunding incorporates the allegations in Paragraphs 1 through 148 as if set forth in full here.

22

00506178.DOC

150. Defendant Moffit's breaches of her Contingent Purchase Agreement with CaseFunding manifest a clear intent not to honor the terms of the Agreement, including the intent not to make future payments owed to CaseFunding under the Agreement.

151. Moffit's clear indication of her intent not to honor the terms of her Contingent Purchase Agreement with CaseFunding amounts to anticipatory breach of the Agreement.

152. CaseFunding also is informed that certain Defendants have stated that they do not intend to honor their obligations under the Contingent Purchase Agreements.

153. Statements by Defendants that they intend to breach the Contingent Purchase Agreements amount to anticipatory breach of the Agreements.

154. CaseFunding will suffer damages as a result of the anticipatory breaches of the Contingent Purchase Agreement.

155. CaseFunding has performed all of its obligations under the Contingent Purchase Agreement.

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Moffit in the amount of at least $185,920.66, plus interest, attorney fees and costs.

## Count XVI -- Anticipatory Breach of Contract (Arousell)

156. CaseFunding incorporates the allegations in Paragraphs 1 through 155 as if set forth in full here.

157. Defendant Arousell's breaches of her Contingent Purchase Agreement with CaseFunding manifest a clear intent not to honor the terms of the Agreement, including the intent not to make future payments owed to CaseFunding under the Agreement.

23

158.    Arousell's clear indication of her intent not to honor the terms of her Contingent Purchase Agreement with CaseFunding amounts to anticipatory breach of the Agreement.

159.    CaseFunding also is informed that certain Defendants have stated that they do not intend to honor their obligations under the Contingent Purchase Agreements.

160.    Statements by Defendants that they intend to breach the Contingent Purchase Agreements amount to anticipatory breach of the Agreements.

161.    CaseFunding will suffer damages as a result of the anticipatory breaches of the Contingent Purchase Agreement.

162.    CaseFunding has performed all of its obligations under the Contingent Purchase Agreement.

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Arousell in the amount of at least $123,619.54, plus interest, attorney fees and costs.

### Count XVII – Statutory Conversion (Rowe)

163.    CaseFunding incorporates the allegations in Paragraphs 1 through 161 as if set forth in full here.

164.    The Contingent Purchase Agreement with CaseFunding provides that Defendant Rowe "unconditionally and irrevocably grants, assigns, transfers and conveys" a portion of any potential proceeds from a settlement or judgment to CaseFunding. (Ex. A, p. 2 ¶ 3, emphasis added.)

165.    The Contingent Purchase Agreement also provides:

> Purchaser's share shall be withheld from any money collected as a result of the Claim and paid to Purchaser immediately upon collection without set-off or reduction of any kind. The amount due shall be paid immediately after attorney fees (including expenses charged by the Seller's

24

attorney for costs) and after payment to any recorded lien holders that might exist prior to the date hereof, or which may have priority by law. <u>Seller will not receive any money from the Proceeds of the Claim until Purchaser has been paid in full</u>.

(*Id.*)

166.   In late 2009, Defendant Rowe exercised wrongful dominion over the initial payment to her under the settlement in the Litigation, which Rowe previously assigned to CaseFunding, and converted the funds to her own use.

167.   The foregoing acts by Defendant Rowe constitute statutory conversion under MCL § 600.2919a.

168.   Under MCL § 600.2919a, Rowe is liable to CaseFunding for "3 times the amount of actual damages sustained, plus costs and reasonable attorney fees."

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Rowe in the amount of at least three times the amount of actual damages sustained by CaseFunding as a result of Rowe's statutory conversion, plus interest, attorney fees and costs.

### Count XVIII – Statutory Conversion (Flemion)

169.   CaseFunding incorporates the allegations in Paragraphs 1 through 168 as if set forth in full here.

170.   The Contingent Purchase Agreement with CaseFunding provides that Defendant Flemion "<u>unconditionally and irrevocably grants, assigns, transfers and conveys</u>" a portion of any potential proceeds from a settlement or judgment to CaseFunding. (Ex. B, p. 2 ¶ 3, emphasis added.)

171.   The Contingent Purchase Agreement also provides:

00506178.DOC

> Purchaser's share shall be withheld from any money collected as a result of the Claim and paid to Purchaser immediately upon collection without set-off or reduction of any kind. The amount due shall be paid immediately after attorney fees (including expenses charged by the Seller's attorney for costs) and after payment to any recorded lien holders that might exist prior to the date hereof, or which may have priority by law. Seller will not receive any money from the Proceeds of the Claim until Purchaser has been paid in full.

(*Id.*)

172.    In late 2009, Defendant Flemion exercised wrongful dominion over the initial payment to her under the settlement in the Litigation, which Rowe previously assigned to CaseFunding, and converted the funds to her own use.

173.    The foregoing acts by Defendant Flemion constitute statutory conversion under MCL § 600.2919a.

174.    Under MCL § 600.2919a, Flemion is liable to CaseFunding for "3 times the amount of actual damages sustained, plus costs and reasonable attorney fees."

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Flemion in the amount of at least three times the amount of actual damages sustained by CaseFunding as a result of Flemion's statutory conversion, plus interest, attorney fees and costs.

**Count XIX – Statutory Conversion (Gipson)**

175.    CaseFunding incorporates the allegations in Paragraphs 1 through 174 as if set forth in full here.

176.    The Contingent Purchase Agreement with CaseFunding provides that Defendant Gipson "unconditionally and irrevocably grants, assigns, transfers and conveys" a portion of any potential proceeds from a settlement or judgment to CaseFunding. (Ex. C, p. 2 ¶ 3, emphasis added.)

26

177.    The Contingent Purchase Agreement also provides:

> Purchaser's share shall be withheld from any money collected as a result of the Claim and paid to Purchaser immediately upon collection without set-off or reduction of any kind.  The amount due shall be paid immediately after attorney fees (including expenses charged by the Seller's attorney for costs) and after payment to any recorded lien holders that might exist prior to the date hereof, or which may have priority by law. Seller will not receive any money from the Proceeds of the Claim until Purchaser has been paid in full.

(*Id.*)

178.    In late 2009, Defendant Gipson exercised wrongful dominion over the initial payment to her under the settlement in the Litigation, which Gipson previously assigned to CaseFunding,  and converted the funds to her own use.

179.    The foregoing acts by Defendant Gipson constitute statutory conversion under MCL § 600.2919a.

180.    Under MCL § 600.2919a, Gipson is liable to CaseFunding for "3 times the amount of actual damages sustained, plus costs and reasonable attorney fees."

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Gipson in the amount of at least three times the amount of actual damages sustained by CaseFunding as a result of Gipson's statutory conversion, plus interest, attorney fees and costs.

### Count XX – Statutory Conversion (Lofton)

181.    CaseFunding incorporates the allegations in Paragraphs 1 through 180 as if set forth in full here.

182.    The Contingent Purchase Agreement with CaseFunding provides that Defendant Lofton "unconditionally and irrevocably grants, assigns, transfers and conveys" a portion of any

27

potential proceeds from a settlement or judgment to CaseFunding. (Ex. D, p. 2 ¶ 3, emphasis added.)

183.   The Contingent Purchase Agreement also provides:

Purchaser's share shall be withheld from any money collected as a result of the Claim and paid to Purchaser immediately upon collection without set-off or reduction of any kind. The amount due shall be paid immediately after attorney fees (including expenses charged by the Seller's attorney for costs) and after payment to any recorded lien holders that might exist prior to the date hereof, or which may have priority by law. Seller will not receive any money from the Proceeds of the Claim until Purchaser has been paid in full.

(*Id.*)

184.   In late 2009, Defendant Lofton exercised wrongful dominion over the initial payment to her under the settlement in the Litigation, which Lofton previously assigned to CaseFunding, and converted the funds to her own use.

185.   The foregoing acts by Defendant Lofton constitute statutory conversion under MCL § 600.2919a.

186.   Under MCL § 600.2919a, Lofton is liable to CaseFunding for "3 times the amount of actual damages sustained, plus costs and reasonable attorney fees."

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Lofton in the amount of at least three times the amount of actual damages sustained by CaseFunding as a result of Lofton's statutory conversion, plus interest, attorney fees and costs.

### Count XXI – Statutory Conversion (Madison)

187.   CaseFunding incorporates the allegations in Paragraphs 1 through 186 as if set forth in full here.

28

00506178.DOC

188.    The Contingent Purchase Agreement with CaseFunding provides that Defendant Madison "unconditionally and irrevocably grants, assigns, transfers and conveys" a portion of any potential proceeds from a settlement or judgment to CaseFunding.  (Ex. E, p. 2 ¶ 3, emphasis added.)

189.    The Contingent Purchase Agreement also provides:

> Purchaser's share shall be withheld from any money collected as a result of the Claim and paid to Purchaser immediately upon collection without set-off or reduction of any kind.  The amount due shall be paid immediately after attorney fees (including expenses charged by the Seller's attorney for costs) and after payment to any recorded lien holders that might exist prior to the date hereof, or which may have priority by law. Seller will not receive any money from the Proceeds of the Claim until Purchaser has been paid in full.

(*Id.*)

190.    In late 2009, Defendant Madison exercised wrongful dominion over the initial payment to her under the settlement in the Litigation, which Madison previously assigned to CaseFunding, and converted the funds to her own use.

191.    The foregoing acts by Defendant Madison constitute statutory conversion under MCL § 600.2919a.

192.    Under MCL § 600.2919a, Madison is liable to CaseFunding for "3 times the amount of actual damages sustained, plus costs and reasonable attorney fees."

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Madison in the amount of at least three times the amount of actual damages sustained by CaseFunding as a result of Madison's statutory conversion, plus interest, attorney fees and costs.

29

00506178.DOC

## Count XXII – Statutory Conversion (Garagiola)

193.    CaseFunding incorporates the allegations in Paragraphs 1 through 192 as if set forth in full here.

194.    The Contingent Purchase Agreement with CaseFunding provides that Defendant Garagiola "unconditionally and irrevocably grants, assigns, transfers and conveys" a portion of any potential proceeds from a settlement or judgment to CaseFunding.  (Ex. F, p. 2 ¶ 3, emphasis added.)

195.    The Contingent Purchase Agreement also provides:

> Purchaser's share shall be withheld from any money collected as a result of the Claim and paid to Purchaser immediately upon collection without set-off or reduction of any kind.  The amount due shall be paid immediately after attorney fees (including expenses charged by the Seller's attorney for costs) and after payment to any recorded lien holders that might exist prior to the date hereof, or which may have priority by law. Seller will not receive any money from the Proceeds of the Claim until Purchaser has been paid in full.

(*Id.*)

196.    In late 2009, Defendant Garagiola exercised wrongful dominion over the initial payment to her under the settlement in the Litigation, which Garagiola previously assigned to CaseFunding, and converted the funds to her own use.

197.    The foregoing acts by Defendant Garagiola constitute statutory conversion under MCL § 600.2919a.

198.    Under MCL § 600.2919a, Garagiola is liable to CaseFunding for "3 times the amount of actual damages sustained, plus costs and reasonable attorney fees."

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Garagiola in the amount of at least three times the amount of actual damages

sustained by CaseFunding as a result of Garagiola's statutory conversion, plus interest, attorney fees and costs.

## Count XXIII – Statutory Conversion (Moffit)

199.    CaseFunding incorporates the allegations in Paragraphs 1 through 198 as if set forth in full here.

200.    The Contingent Purchase Agreement with CaseFunding provides that Defendant Moffit "unconditionally and irrevocably grants, assigns, transfers and conveys" a portion of any potential proceeds from a settlement or judgment to CaseFunding.  (Ex. G, p. 2 ¶ 3, emphasis added.)

201.    The Contingent Purchase Agreement also provides:

> Purchaser's share shall be withheld from any money collected as a result of the Claim and paid to Purchaser immediately upon collection without set-off or reduction of any kind.  The amount due shall be paid immediately after attorney fees (including expenses charged by the Seller's attorney for costs) and after payment to any recorded lien holders that might exist prior to the date hereof, or which may have priority by law. Seller will not receive any money from the Proceeds of the Claim until Purchaser has been paid in full.

(*Id.*)

202.    In late 2009, Defendant Moffit exercised wrongful dominion over the initial payment to her under the settlement in the Litigation, which Moffit previously assigned to CaseFunding, and converted the funds to her own use.

203.    The foregoing acts by Defendant Moffit constitute statutory conversion under MCL § 600.2919a.

204.    Under MCL § 600.2919a, Moffit is liable to CaseFunding for "3 times the amount of actual damages sustained, plus costs and reasonable attorney fees."

00506178.DOC

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Moffit in the amount of at least three times the amount of actual damages sustained by CaseFunding as a result of Moffit's statutory conversion, plus interest, attorney fees and costs.

### Count XXIV – Statutory Conversion (Arousell)

205. CaseFunding incorporates the allegations in Paragraphs 1 through 204 as if set forth in full here.

206. The Contingent Purchase Agreement with CaseFunding provides that Defendant Arousell "unconditionally and irrevocably grants, assigns, transfers and conveys" a portion of any potential proceeds from a settlement or judgment to CaseFunding. (Ex. H, p. 2 ¶ 3, emphasis added.)

207. The Contingent Purchase Agreement also provides:

> Purchaser's share shall be withheld from any money collected as a result of the Claim and paid to Purchaser immediately upon collection without set-off or reduction of any kind. The amount due shall be paid immediately after attorney fees (including expenses charged by the Seller's attorney for costs) and after payment to any recorded lien holders that might exist prior to the date hereof, or which may have priority by law. Seller will not receive any money from the Proceeds of the Claim until Purchaser has been paid in full.

(*Id.*)

208. In late 2009, Defendant Arousell exercised wrongful dominion over the initial payment to her under the settlement in the Litigation, which Moffit previously assigned to CaseFunding, and converted the funds to her own use.

209. The foregoing acts by Defendant Arousell constitute statutory conversion under MCL § 600.2919a.

32

00506178.DOC

210. Under MCL § 600.2919a, Arousell is liable to CaseFunding for "3 times the amount of actual damages sustained, plus costs and reasonable attorney fees."

WHEREFORE, CaseFunding respectfully requests that the Court enter a Judgment against Defendant Arousell in the amount of at least three times the amount of actual damages sustained by CaseFunding as a result of Arousell's statutory conversion, plus interest, attorney fees and costs.

## Count XXV – Unjust Enrichment (Rowe)

211. CaseFunding repeats the allegations in Paragraphs 1 through 210 as if set forth in full here.

212. If this Court finds that no valid contract existed between CaseFunding and Defendant Rowe, Rowe nonetheless received the benefit of CaseFunding's funds provided to her or for her benefit.

213. It would be inequitable to allow Rowe to retain those benefits without compensating CaseFunding.

214. To avoid unjust enrichment, CaseFunding must be awarded damages in the amount of at least $75,250.

WHEREFORE, Plaintiffs request a Judgment against Defendant Rowe in the amount of at least $75,250, plus interest, attorney fees and costs.

## Count XXVI – Unjust Enrichment (Flemion)

215. CaseFunding repeats the allegations in Paragraphs 1 through 214 as if set forth in full here.

33

00506178.DOC

216.    If this Court finds that no valid contract existed between CaseFunding and Defendant Flemion, Flemion nonetheless received the benefit of CaseFunding's funds provided to her or for her benefit.

217.    It would be inequitable to allow Flemion to retain those benefits without compensating CaseFunding.

218.    To avoid unjust enrichment, CaseFunding must be awarded damages in the amount of at least $154,500.

WHEREFORE, Plaintiffs request a Judgment against Defendant Flemion in the amount of at least $154,500, plus interest, attorney fees and costs.

### Count XXVII – Unjust Enrichment (Gipson)

219.    CaseFunding repeats the allegations in Paragraphs 1 through 218 as if set forth in full here.

220.    If this Court finds that no valid contract existed between CaseFunding and Defendant Gipson, Gipson nonetheless received the benefit of CaseFunding's funds provided to her or for her benefit.

221.    It would be inequitable to allow Gipson to retain those benefits without compensating CaseFunding.

222.    To avoid unjust enrichment, CaseFunding must be awarded damages in the amount of at least $125,896.14.

WHEREFORE, Plaintiffs request a Judgment against Defendant Gipson in the amount of at least $125,896.14, plus interest, attorney fees and costs.

34

## Count XXVIII – Unjust Enrichment (Lofton)

223.   CaseFunding repeats the allegations in Paragraphs 1 through 222 as if set forth in full here.

224.   If this Court finds that no valid contract existed between CaseFunding and Defendant Lofton, Lofton nonetheless received the benefit of CaseFunding's funds provided to her or for her benefit.

225.   It would be inequitable to allow Lofton to retain those benefits without compensating CaseFunding.

226.   To avoid unjust enrichment, CaseFunding must be awarded damages in the amount of at least $76,250.

WHEREFORE, Plaintiffs request a Judgment against Defendant Lofton in the amount of at least $76,250, plus interest, attorney fees and costs.

## Count XXIX – Unjust Enrichment (Madison)

227.   CaseFunding repeats the allegations in Paragraphs 1 through 226 as if set forth in full here.

228.   If this Court finds that no valid contract existed between CaseFunding and Defendant Madison, Madison nonetheless received the benefit of CaseFunding's funds provided to her or for her benefit.

229.   It would be inequitable to allow Madison to retain those benefits without compensating CaseFunding.

230.   To avoid unjust enrichment, CaseFunding must be awarded damages in the amount of at least $142,500.

00506178.DOC

WHEREFORE, Plaintiffs request a Judgment against Defendant Madison in the amount of at least $142,500, plus interest, attorney fees and costs.

## Count XXX – Unjust Enrichment (Garagiola)

231. CaseFunding repeats the allegations in Paragraphs 1 through 230 as if set forth in full here.

232. If this Court finds that no valid contract existed between CaseFunding and Defendant Garagiola, Garagiola nonetheless received the benefit of CaseFunding's funds provided to her or for her benefit.

233. It would be inequitable to allow Garagiola to retain those benefits without compensating CaseFunding.

234. To avoid unjust enrichment, CaseFunding must be awarded damages in the amount of at least $113,679.80.

WHEREFORE, Plaintiffs request a Judgment against Defendant Garagiola in the amount of at least $113,679.80, plus interest, attorney fees and costs.

## Count XXXI – Unjust Enrichment (Moffit)

235. CaseFunding repeats the allegations in Paragraphs 1 through 234 as if set forth in full here.

236. If this Court finds that no valid contract existed between CaseFunding and Defendant Moffit, Moffit nonetheless received the benefit of CaseFunding's funds provided to her for her benefit.

237. It would be inequitable to allow Moffit to retain those benefits without compensating CaseFunding.

00506178.DOC

238. To avoid unjust enrichment, CaseFunding must be awarded damages in the amount of at least $100,276.55.

WHEREFORE, Plaintiffs request a Judgment against Defendant Moffit in the amount of at least $100,276.55, plus interest, attorney fees and costs.

### Count XXXII – Unjust Enrichment (Arousell)

239. CaseFunding repeats the allegations in Paragraphs 1 through 238 as if set forth in full here.

240. If this Court finds that no valid contract existed between CaseFunding and Defendant Arousell, Arousell nonetheless received the benefit of CaseFunding's funds provided to her or for her benefit.

241. It would be inequitable to allow Arousell to retain those benefits without compensating CaseFunding.

242. To avoid unjust enrichment, CaseFunding must be awarded damages in the amount of at least $75,751.65.

WHEREFORE, Plaintiffs request a Judgment against Defendant Arousell in the amount of at least $75,751.65, plus interest, attorney fees and costs.

Respectfully submitted,
WILLIAMS, WILLIAMS, RATTNER & PLUNKETT, P.C.


_____/s/ David E. Plunkett_____
David E. Plunkett (P66696)
John W. Crowe (P62324)
Wayne Walker (P51290)
Attorneys for Plaintiffs
380 N. Old Woodward Ave., Suite 300
Birmingham, MI 48009
(248) 642-0333
dep@wwrplaw.com
jwc@wwrplaw.com
Dated: April 16, 2010          wew@wwrplaw.com

37

00506178.DOC