UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONEYFORLAWSUITS V LP
D/b/a MFL CASEFUNDING and
GUARDIAN ADVISORS LP II
D/b/a MFL CASEFUNDING,

              Plaintiffs,                          Civil Case No.
vs.                                              10-cv-11537

TAMMY ROWE a/k/a TAMMY LACROSS,          HON. MARK A. GOLDSMITH
CARRIE FLEMION, LURA L. GIPSON,
ROXANNE LOFTON, DELORES MADISON,
WENDY GARAGIOLA, PAMELA MOFFIT,
and VIVIAN AROUSELL,

              Defendants.
_____/

## OPINION AND ORDER (1) ACCEPTING AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, (2) GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AND (3) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court are Plaintiffs' and Defendants' cross-motions for summary judgment. The matter was referred to Magistrate Judge Paul J. Komives, who issued a Report and Recommendation ("R&R") on January 23, 2012 (Dkt. 206), recommending that summary judgment be granted in favor of Plaintiffs and that Defendants' motion for summary judgment be denied. Defendants timely filed objections (Dkt. 207), and Plaintiffs filed a response (Dkt. 208). For the reasons that follow, the Court accepts and adopts the Magistrate Judge's R&R as the findings and conclusions of the Court, grants Plaintiffs' motion for summary judgment (Dkt. 188), and denies Defendants' motion for summary judgment (Dkt. 190).

## I.      Background

The background of this case has been sufficiently described in the R&R.  In short,

Plaintiffs, doing business as MFL CaseFunding ("CaseFunding"), invest in claims and lawsuits

by purchasing the right to receive a portion of any judgment or settlement.  Defendants in the

instant action were members of a plaintiff class in a suit against the Michigan Department of

Corrections with whom CaseFunding entered into "Contingent Purchase Agreements."  The class

action settled and Defendants each received – and will continue to receive for a number of years

– payments as proceeds of the settlement.  Defendants have made clear that they do not intend to

pay any of the proceeds from the settlement to Plaintiffs.  Plaintiffs' complaint asserts state law

causes of action for breach of contract, anticipatory breach of contract, statutory conversion, and

unjust enrichment.  As the Magistrate Judge stated,

> there are no genuine issues of fact present, there is no dispute concerning the
> terms of the Agreements, and there is no dispute that defendants have breached
> the Agreements by failing to pay to CaseFunding its share of the proceeds from
> the settlement.  Rather, "[t]he only disputed issue in this case is whether the
> Contingent Purchase Agreements are enforceable contracts."  Br. in Supp. of
> Def.s' Mot. for Summ. J., at 1.

R&R at 8.

In Defendants' view, the contracts are unenforceable because they are usurious under

Michigan law.  Plaintiffs disagree, asserting that the choice of law provision in the Agreements

requires the Court to apply New York's usury law, not Michigan's.  Plaintiffs further argue that

even under Michigan law the contracts would be enforceable.

The Magistrate Judge agreed with Plaintiffs and recommended that the Court grant

Plaintiffs' motion for summary judgment and deny Defendants' motion for summary judgment.

Defendants have filed an objection to the R&R, raising three objections.  The Court reviews <u>de</u>

novo those portions of the R&R to which a specific objection has been made.  Fed. R. Civ. P. 72(b).  The Court now considers each objection, in turn.

## II.  Discussion

### a.  Objection I

Under Michigan law, a choice-of-law clause will not be enforced if it "'would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue.'"  <u>Chrysler Corp v. Skyline Indus. Services, Inc.</u>, 528 N.W.2d 698, 704 (Mich. 1995) (quoting Restatement 2d Conflict of Laws (the "Restatement") § 187(2)(b)).

In their first objection, Defendants argue that the choice of law clauses in the Contingent Purchase Agreements should be invalidated because the application of New York law would violate a fundamental public policy of Michigan law.  Under New York law, only contracts for loans may be voided for usurious rates of interest.  Michigan, on the other hand, applies its usury laws to all agreements that charge a rate of interest, even if they are not loan agreements.  <u>Black v. Contract Purchase Corp.</u>, 42 N.W.2d 768, 772 (Mich. 1950).  This distinction, argue Defendants, shows that the two states have "virtually antithetical policy interests," and that application of New York usury law would violate Michigan's fundamental usury policies.  Obj. at 3.

Defendants also object to the Magistrate Judge's characterization of the difference between Michigan and New York usury statutes as "slightly different" because, "[u]nder Michigan Usury Statute, the interest provisions are void while under New York Usury Statute, they are not."  Obj. at 2.

3

Defendants' arguments are without merit.  The Sixth Circuit explained that, in choice-of-law disputes,

> "[t]he fact . . . that a different result might be achieved if the law of the chosen forum is applied does not suffice to show that the foreign law is repugnant to a fundamental policy of the forum state.  If the situation were otherwise, and foreign law could automatically be ignored whenever it differed from the law of the forum state, then the entire body of law relating to conflicts would be rendered meaningless."

Johnson v. Ventra Group, Inc., 191 F.3d 732, 740 (6th Cir. 1999) (citation omitted).  The Court concludes that, although Michigan and New York differ in certain applications of the prohibition on usury, the laws are not so different that application of New York law would violate Michigan's fundamental public policy, nor do the two states' laws stem from fundamentally different policy interests.

In support of their position, Defendants attempt to draw parallels between this case and Vinch v. Lawsuit Financing, Inc., No. 2004-3963-CK (Mich. Cir. Ct. Feb. 28, 2005), where the Macomb County Circuit Court invalidated a choice-of-law clause favoring Nevada as contrary to fundamental public policy.  However, Vinch is distinguishable from our case because, as the court noted, "Nevada's [usury] statute provides that the parties may agree to any rate of interest, and there is no statute which precludes high interest rates."  Id. at 4-5.  Thus, that contract may have violated public policy because, in effect, Nevada has no usury laws.  In contrast here, although New York and Michigan usury laws differ in application, Defendants have not shown that such difference means that an application of New York law would violate Michigan's fundamental public policy.[1]

---

[1] Defendants object to the Magistrate Judge's statement that "courts in other jurisdictions that follow the rule of § 187 generally enforce a contractual choice of law provision even as to contracts that would be usurious under the forum state's law."  R&R at 13.  Defendants argue that (i) the cases the Magistrate Judge cited did not involve Michigan;(ii) the cases involved large commercial loans; (iii) the decisions in those cases "made specific rulings involving

4

In illustrating that Michigan's broader application of the law in one context does not necessarily indicate a divergence of fundamental public policy, the Magistrate Judge correctly noted that

> in many respects New York law is more protective of borrowers than Michigan law. Under New York law, the rate of interest is capped at 6%, rather than at 7% as under Michigan law. See N.Y. GEN. OBLIG. LAW § 5-501. Further, unlike Michigan law, under New York law "[a] usurious contract is void and relieves the borrower of the obligation to repay principal and interest thereon." Venables v. Sagona, 925 N.Y.S.2d 578, 580 (N.Y. App. Div. 2011).

R&R at 14 n.7. Accordingly, even if the differences in usury statutes would lead to a different outcome in this case, Defendant has not shown that an application of New York law would violate Michigan's fundamental public policy.[2]

### b. Objection II

The Magistrate Judge concluded that,

> even if application of New York usury law would violate Michigan public policy, this by itself would be insufficient to reject the parties' choice of law. The public policy exception applies only where the chosen law is contrary to a fundamental policy "of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of [§] 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." RESTATEMENT (SECOND) OF CONFLICTS OF LAWS, § 187(2)(b). In other words, the conflict between Michigan and New York public policy is relevant only if both (a) Michigan has a materially greater interest than New York in determining the usury issue, and (b) Michigan law would apply under § 188 in the absence of the parties' choice of law provision. See Kelly Servs., Inc. v. Marzullo, 591 F. Supp. 2d 924, 938 (E.D. Mich. 2008) (Rosen, J.). Here, neither condition is met.

---

analysis of the Restatement factors that are not present here"; and (iv) those cases are contradicted by Vinch, No. 2004-3963-CK. However, Defendants have provided no support or explanation as to why the nature of the loans involved has any effect on the persuasiveness of the cases. Regarding Defendants' argument that Vinch supersedes these cases, Vinch is distinguishable, as discussed above.

[2] As the Court concludes in connection with Defendants' third objection below, however, the contracts would be enforceable even under Michigan law.

R&R at 14-15.  The Magistrate Judge concluded that Michigan does not have a "materially greater interest" in the issue than New York because,

> [w]hile Michigan undoubtedly has an interest in protecting its residents from usurious interest rates on loans, it is equally true that New York has an equally strong interest in protecting entities doing business in that state, and in allowing those entities to enter into and enforce contracts which are permitted by New York law.

Id.

In Defendants' second objection, they assert that Michigan does indeed have a materially greater interest in the outcome of this case than New York.  In so arguing, Defendants rely on Kaneff v. Delaware Title Loans, Inc., 587 F.3d 616 (3rd Cir. 2009), where the debtor, a Pennsylvania resident, borrowed $500 from the lender, a Delaware corporation, with an interest rate of 300.01%.  Following default on the loan and the subsequent repossession of her car, the debtor brought suit against the lender under Pennsylvania usury law.  The lender argued that the loan's Delaware choice-of-law clause should apply.  The Kaneff court, following Pennsylvania law that substantially adopts the same sections of the Restatement approved by Michigan courts, found that Delaware law violated a fundamental public policy of Pennsylvania, and that Pennsylvania's interest in the transaction was superior to Delaware's.

Kaneff is distinguishable.  First, like Vinch, described above, Kaneff involved a choice-of-law clause favoring a state with no usury laws.  Second, Kaneff relied on a Pennsylvania precedent "that engaging in nonmortgage consumer lending to Pennsylvania residents by any means . . . constitutes engaging in such business [in Pennsylvania.]"  Id. at 623 (quoting Cash Am. Net of Nev., LLC v. Penn. Dept. of Banking, 978 A.2d 1028, 1030 (Pa. Commw. Ct. 2009).  Defendants do not cite any similar rule in this jurisdiction.

Defendants also dispute the Magistrate Judge's conclusion that under § 188 of the Restatement – which Michigan law follows – a Michigan court would still apply New York law.

This section of the Restatement provides that in the absence of an enforceable choice of law provision, the factors that should be considered when determining the applicable law are:

> (a) the place of contracting;
> (b) the place of negotiation of the contract;
> (c) the place of performance;
> (d) the location of the subject matter of the contract; and
> (e) the domicile, residence, nationality, place of incorporation, and the place of business of the parties.

Restatement § 188.  However, because the Court agrees with the Magistrate Judge that Michigan does not have a materially greater interest in the usury issue than does New York, for the reasons set forth in the R&R, there is no need to engage in the § 188 analysis and decide between the Magistrate Judge's conclusion on the one hand (that the balance of factors favor New York law) and Defendants' contention on the other (that the balance of factors favor Michigan law).

Accordingly, the Court will not set aside the parties' decision in the contract's choice-of-law provision to use New York law.

### c.  Objection III

Defendants' final objection relates to the Magistrate Judge's conclusion that because there was no guarantee of repayment, even if the Court applies Michigan law, the Contingent Purchase Agreements do not constitute "interest" under the Michigan usury statute.[3]  Defendants rely on a number of cases in which courts held that contracts for legal advances were usurious where the rate of return was greater than the rate of interest allowed under usury statutes.  See Lawsuit Financial, L.L.C. v. Curry, 683 N.W.2d 233 (Mich. Ct. App. 2004); Echeverria v. Estate of Lindner, No. 018666/2002, 2005 WL 1083704 (N.Y. Sup. Ct. Mar. 02, 2005); Odell v. Legal Bucks, LLC, 665 S.E.2d 767 (N.C. Ct. App.  2008); Fausone v. U.S. Claims, Inc., 915 So.2d 626

---

[3] The Magistrate Judge noted that this same reasoning explains why the Contingent Purchase Agreements do not constitute "loans" under New York law.  R&R at 25.

(Fla. Ct. App 2005).  Defendants also rely on a cease-and-desist order issued by the Maryland Commissioner of Financial Regulation.  In the Matter of Am. Legal Funding, LLC, No. CFR-FY2010-341, at 3 (Md. Comm'r of Fin. Regulation, Feb. 4, 2011) (Exhibit 3 to Obj.).

Defendants' reliance on these cases is misplaced.  As the Magistrate Judge explained in the R&R, the Lawsuit Financial court concluded that the advance was a loan because the defendants in the underlying personal injury suit admitted liability, and therefore there was an absolute right to repayment.  Lawsuit Financial, 683 N.W.2d at 239.  In contrast, here, Plaintiffs' right to payment was contingent on the outcome in the underlying suit.  As the Magistrate Judge explained,

> [w]hile it is true that a judgment had been entered in the underlying suit, as one had been entered in Lawsuit Financial, unlike in that case here the state court defendants had not admitted liability at the time the Agreements were executed. On the contrary, the state court defendants were appealing on the basis that the Civil Rights Act did not apply to prisoners, and that in any event they were not liable for the alleged harassment.  As counsel for the state court plaintiffs (defendants here) repeatedly acknowledged, while this appeal was pending – which it was at the time all of the Agreements were executed – there remained a substantial risk that the Michigan Supreme Court would reverse the judgment and that the state court plaintiffs would not recover on their claims.  See Br. in Supp. of Pl.s' Mot., Exs. N & O.

R&R at 26-27.  Thus, Lawsuit Financial does not support Defendants' contentions.  Similarly, in Echeverria, the court found the contract usurious because it considered the contingency recited in the contract a sham, thus rendering the agreement a loan and not an investment.  Echeverria, 801 N.Y.S.2d at *8.  In contrast, here, the outcome of the underlying case was not certain.

In Odell, the Court of Appeals of North Carolina held that a repayment obligation contingent on litigation success violated North Carolina's usury statute because, under North Carolina law, the repayment obligation did not have to be absolute to trigger application of the usury statute.  Odell, 665 S.E.2d at 777.  This is entirely inconsistent with Michigan law, which requires an absolute obligation-to-repay to trigger application of Michigan's usury statute.

8

Finally, neither the court in <u>Fausone</u> nor the Maryland Commissioner of Financial Regulation analyzed whether a contingent payment was usurious; thus, they are inapplicable to the case at bar.

Accordingly, even if this case would be decided under Michigan law, the contracts would not be void as usurious.

### III.    Conclusion

For all the foregoing reasons given above, Defendants' Objections to the R&R (Dkt. 207) are overruled, and the Court accepts and adopts the Magistrate Judge's R&R (Dkt. 206) as the findings and conclusions of the Court.  Defendants' motion for summary judgment (Dkt. 190) is denied.  Summary judgment is granted in favor of Plaintiffs (Dkt. 188).  By April 5, 2012, the parties shall submit a proposed judgment if they can agree as to form; if the parties cannot agree as to form, Plaintiffs shall submit a proposed judgment by April 5, 2012, and any objections to such proposed judgment shall be filed by April 12, 2012.

SO ORDERED.

Dated:  March 29, 2012                          s/Mark A. Goldsmith
        Flint, Michigan                         MARK A. GOLDSMITH
                                                United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 29, 2012.

                                                s/Deborah J. Goltz
                                                DEBORAH J. GOLTZ
                                                Case Manager

9